In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00237-CR
______________________________


ZACHARY GENTRY, Appellant
Â 
V.
Â 
THE STATE OF TEXAS, Appellee


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the County Court
Marion County, Texas
Trial Court No. 11735


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Ross


MEMORANDUM OPINION

Â Â Â Â Â Â Â Â Â Â Zachary Gentry appeals from an order placing him on misdemeanor deferred
adjudication community supervision for ninety days and assessing a $150.00 fine in
accordance with a plea agreement. His appeal is from the denial of a pretrial motion to
suppress evidence. Gentry contends the trial court erred by denying his motion to
suppress because there was no basis for the arresting officer to stop and frisk him.
Â Â Â Â Â Â Â Â Â Â Gentry and a companion were walking down the side of a highway in Marion
County. They were approached by Constable Jerry Dreesen and Deputy Sheriff Shawn
Cox in response to reports that two men were "walking in and out of traffic or in and out of
pastures and things north of Jefferson." Dreesen conducted a pat-down search of Gentry
and found what he described as a switchblade pocketknife and a small black box
containing marihuana. Dreesen arrested Gentry, who was tried in this case for possession
of a prohibited weapon.
Â Â Â Â Â Â Â Â Â Â We are immediately confronted with an issueâseparate from Gentry's
contentionsâthat is dispositive of this case: whether the trial judge was qualified to
preside in this particular case. At the hearing on the motion to suppress, the trial judge
effectively short-circuited the proceedings by stating he had personal knowledge of the
actions of Gentry and his cohort. The judge stated that he lived on the road in question,
that he was one of the people who almost ran into these individuals, and that he was not
sure he was not one of the persons who called Dreesen concerning them. Further, and
of most consequence, the trial judge explicitly stated on two occasions that he was making
his ruling based on his personal knowledge about the sequence of events. 
Â Â Â Â Â Â Â Â Â Â Although Gentry's counsel suggested that the judge recuse himself because he
might be a witness, no issue was clearly raised regarding this issue either at the hearing
or on appeal. The initial hurdle, then, is whether this matter is one we should address in
the absence of either a clear complaint at the trial court level or a complaint on appeal. For
the reasons set out below, we believe we must do so. 
Â Â Â Â Â Â Â Â Â Â In the middle of the State's closing argument at the suppression hearing, the trial
judge interrupted:
You can stop. Because I'm going to be honest with you, I remember this
day. I live on that road. This Motion is going to be denied because I'm one
of them that almost hit them. I'm going to deny this Motion to Suppress. I'm
not so sure that I wasn't one of them who called Officer Dreesen to be
honest with you. I remember this day and I remember the situation. I'm
going to deny the Defendant's Motion today; it's not going to be granted. 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â . . . . 
Â 
Like I say, I've got firsthand knowledge of the situation . . . and I believe he
has the right to do this [search the defendant].

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â . . . .

Â Â Â Â Â Â Â Â Â Â To be honest with you, my decision is based on what I saw that day. 

Â Â Â Â Â Â Â Â Â Â A defendant's rights arise from distinct rules that generally fall into one of three
categories: (1) absolute requirements and prohibitions; (2) rights which must be
implemented by the system unless expressly waived; and (3) rights which are implemented
only on request. Marin v. State, 851 S.W.2d 275, 279 (Tex. Crim. App.1993), overruled
in part on other grounds by Cain v. State, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997). 
Absolute requirements and prohibitions, as well as rights which must be implemented
unless waived, cannot be made subject to procedural default on appeal because, by
definition, they are not forfeitable. Marin, 851 S.W.2d 279. Determining which category
a right falls into will usually settle the question of whether a procedural default occurred,
and therefore whether the issue was preserved for appeal. Id.
Â Â Â Â Â Â Â Â Â Â The deprivation of a defendant's right to a trial before an impartial judge is a
"structural defect" in the trial mechanism itself. Arizona v. Fulminante, 499 U.S. 279,
309â10 (1991). Without the basic protection of an impartial judge, "a criminal trial cannot
reliably serve its function as a vehicle for determination of guilt or innocence, and no
criminal punishment can be regarded as fundamentally fair." Id. (quoting Rose v. Clark,
478 U.S. 570, 577â78 (1986)); see also Neder v. United States, 527 U.S. 1, 8â9 (1999). 
Â Â Â Â Â Â Â Â Â Â We acknowledge that an accused may waive even constitutional rights. Saldano
v. State, 70 S.W.3d 873, 891 (Tex. Crim. App. 2002) (en banc); Jenkins v. State, 912
S.W.2d 793, 815 (Tex. Crim. App. 1995) (op. on reh'g) (en banc). Nonetheless, Rule
103(d) of the Rules of Evidence authorizes us, in a criminal case, to "take notice of
fundamental errors affecting substantial rights although they were not brought to the
attention of the court." Tex. R. Evid. 103(d); King v. State, 174 S.W.3d 796, 819 (Tex.
App.âCorpus Christi 2005, pet. ref'd).
Â Â Â Â Â Â Â Â Â Â We conclude a defendant does not waive appellate review of the structural defect
of his or her right to an impartial judge by failing to object. See Mendez v. State, 138
S.W.3d 334, 341 (Tex. Crim. App. 2004); Blue v. State, 41 S.W.3d 129, 132â33 (Tex.
Crim. App. 2000) (Keasler, J., concurring at 138â39); Marin, 851 S.W.2d at 278. 
Â Â Â Â Â Â Â Â Â Â Beyond the initial preservation of error issue, we are further confronted with
unassigned error. In this case, we are not merely addressing possible error, but the type
of error that is consistently described as absolutely fundamental in character. See Lott v.
State, 874 S.W.2d 687, 688 (Tex. Crim. App. 1994); Carroll v. State, 75 S.W.3d 633, 634
(Tex. App.âWaco 2002, no pet.); Wade v. State, 31 S.W.3d 273, 275 (Tex.
App.âHouston [1st Dist.] 2000, pet. ref'd).


 An appellate court may in its discretion
address "unassigned" error, and because of the nature of this issue, in this instance we
choose to do so. See Urias v. State, 155 S.W.3d 141, 144 (Tex. Crim. App. 2004). Â Â Â Â Â Â Â Â Â Â Fundamental error is one that may be presented for the first time on appeal. For
example, former jeopardy is fundamental and may be raised at any time. See Muncy v.
State, 505 S.W.2d 925 (Tex. Crim. App. 1974). Also, as presented in this case, an issue
concerning the disqualification of a judge may not be waived by the parties, but may be
presented on appeal even in the absence of an objection in the trial court. Gamez v. State,
737 S.W.2d 315, 318 (Tex. Crim. App. 1987). Indeed, there is long-standing authority
holding that the question of disqualification of a judge (which involves his or her authority
to act in a case) may be raised at any timeâon appeal or in a collateral attack on the
judgment. In re Gonzalez, 115 S.W.3d 36 (Tex. App.âSan Antonio 2003, orig.
proceeding).
Â Â Â Â Â Â Â Â Â Â The Texas Court of Criminal Appeals recently elaborated on the differences
between structural errors and systemic requirements as those concepts have been used
by courts in reviewing actions by the trial courts. Mendez, 138 S.W.3d at 339â43. Our
analysis here adds an additional layer because we are required to decide whether the
matter could properly be raised sua sponteâwhich involves considerations from both of
those concepts. The result of our analysis on the merits, however, is almost a foregone
conclusion based on the analysis required to determine whether we could address the
issue on its merits. 
Â Â Â Â Â Â Â Â Â Â The bias, or lack of impartiality, of a trial judge may be a ground for judicial
disqualification when it is of such a character as to deny the defendant due process. Kemp
v. State, 846 S.W.2d 289 (Tex. Crim. App. 1992). An impartial trier of fact is one capable
and willing to decide the case based solely on the evidence before it. See Smith v. Phillips,
455 U.S. 209, 217 (1982); Ruckman v. State, 109 S.W.3d 524, 527 (Tex. App.âTyler
2000, pet. ref'd). 
Â Â Â Â Â Â Â Â Â Â This case contains one factor that is crucial to our review. Under these facts and
this record, we need not examine evidence for implications of partiality, or assume partiality
based on comments by the trial judge, or by ambiguous references to the events or even
mere knowledge of the location and the facts surrounding the arrest. In this case, as we
have quoted above, the trial judge stated clearly that he was making his determination and
ruling based, not on the evidence adduced at the hearing, but on his personal knowledge
of the event. To do so is error. 
Â Â Â Â Â Â Â Â Â Â We therefore conclude that, under these facts, the trial judge was disqualified from
acting in this case because of his stated inability to rule based solely on the evidence
adduced at the trial. Thus, having found that the trial judge's action in basing his ruling not
on the evidence, but on his personal knowledge, was error requiring disqualification, the
actions taken by the disqualified jurist are void.



Â 
Â 
Â 
Â 
Â Â Â Â Â Â Â Â Â Â Having reached this conclusion, we find it unnecessary to address Gentry's
contentions. Accordingly, we reverse the judgment and remand this case to the trial court
for further proceedings.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Donald R. Ross
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice 

Date Submitted:Â Â Â Â Â Â February 2, 2006
Date Decided:Â Â Â Â Â Â Â Â Â April 12, 2006

Do Not Publish






ader, li.MsoHeader, div.MsoHeader
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Header Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:none;
 tab-stops:center 3.25in right 6.5in;
 mso-layout-grid-align:none;
 text-autospace:none;
 font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;}
p.MsoFooter, li.MsoFooter, div.MsoFooter
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Footer Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:none;
 tab-stops:center 3.25in right 6.5in;
 mso-layout-grid-align:none;
 text-autospace:none;
 font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;}
a:link, span.MsoHyperlink
 {mso-style-priority:99;
 color:blue;
 mso-themecolor:hyperlink;
 text-decoration:underline;
 text-underline:single;}
a:visited, span.MsoHyperlinkFollowed
 {mso-style-noshow:yes;
 mso-style-priority:99;
 color:purple;
 mso-themecolor:followedhyperlink;
 text-decoration:underline;
 text-underline:single;}
p.MsoAcetate, li.MsoAcetate, div.MsoAcetate
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Balloon Text Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:none;
 mso-layout-grid-align:none;
 text-autospace:none;
 font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;
 mso-bidi-font-family:Tahoma;}
p.MsoNoSpacing, li.MsoNoSpacing, div.MsoNoSpacing
 {mso-style-name:"No Spacing\,Quotation";
 mso-style-priority:1;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-parent:"";
 margin-top:0in;
 margin-right:.5in;
 margin-bottom:0in;
 margin-left:.5in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 text-align:justify;
 text-justify:inter-ideograph;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
p.MsoNoSpacingCxSpFirst, li.MsoNoSpacingCxSpFirst, div.MsoNoSpacingCxSpFirst
 {mso-style-name:"No Spacing\,QuotationCxSpFirst";
 mso-style-priority:1;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-parent:"";
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:.5in;
 margin-bottom:0in;
 margin-left:.5in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 text-align:justify;
 text-justify:inter-ideograph;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
p.MsoNoSpacingCxSpMiddle, li.MsoNoSpacingCxSpMiddle, div.MsoNoSpacingCxSpMiddle
 {mso-style-name:"No Spacing\,QuotationCxSpMiddle";
 mso-style-priority:1;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-parent:"";
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:.5in;
 margin-bottom:0in;
 margin-left:.5in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 text-align:justify;
 text-justify:inter-ideograph;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
p.MsoNoSpacingCxSpLast, li.MsoNoSpacingCxSpLast, div.MsoNoSpacingCxSpLast
 {mso-style-name:"No Spacing\,QuotationCxSpLast";
 mso-style-priority:1;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-parent:"";
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:.5in;
 margin-bottom:0in;
 margin-left:.5in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 text-align:justify;
 text-justify:inter-ideograph;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;}
span.FootnoteTextChar
 {mso-style-name:"Footnote Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Footnote Text";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-hansi-font-family:"Times New Roman";}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 mso-ascii-font-family:Calibri;
 mso-ascii-theme-font:minor-latin;
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;
 mso-hansi-font-family:Calibri;
 mso-hansi-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
.MsoPapDefault
 {mso-style-type:export-only;
 margin-bottom:10.0pt;
 line-height:115%;}
 /* Page Definitions */
 @page
 {mso-page-border-surround-header:no;
 mso-page-border-surround-footer:no;
 mso-footnote-separator:url("6-11-060-CR%20McCarty%20v.%20State%20Opinion%20mtd_files/header.htm") fs;
 mso-footnote-continuation-separator:url("6-11-060-CR%20McCarty%20v.%20State%20Opinion%20mtd_files/header.htm") fcs;
 mso-endnote-separator:url("6-11-060-CR%20McCarty%20v.%20State%20Opinion%20mtd_files/header.htm") es;
 mso-endnote-continuation-separator:url("6-11-060-CR%20McCarty%20v.%20State%20Opinion%20mtd_files/header.htm") ecs;}
@page WordSection1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:1.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-11-060-CR%20McCarty%20v.%20State%20Opinion%20mtd_files/header.htm") eh1;
 mso-header:url("6-11-060-CR%20McCarty%20v.%20State%20Opinion%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-11-060-CR%20McCarty%20v.%20State%20Opinion%20mtd_files/header.htm") ef1;
 mso-footer:url("6-11-060-CR%20McCarty%20v.%20State%20Opinion%20mtd_files/header.htm") f1;
 mso-first-header:url("6-11-060-CR%20McCarty%20v.%20State%20Opinion%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-11-060-CR%20McCarty%20v.%20State%20Opinion%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.WordSection1
 {page:WordSection1;}
@page WordSection2
 {size:8.5in 11.0in;
 margin:2.0in 1.0in 1.0in 1.0in;
 mso-header-margin:2.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-11-060-CR%20McCarty%20v.%20State%20Opinion%20mtd_files/header.htm") eh1;
 mso-header:url("6-11-060-CR%20McCarty%20v.%20State%20Opinion%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-11-060-CR%20McCarty%20v.%20State%20Opinion%20mtd_files/header.htm") ef1;
 mso-footer:url("6-11-060-CR%20McCarty%20v.%20State%20Opinion%20mtd_files/header.htm") f2;
 mso-first-header:url("6-11-060-CR%20McCarty%20v.%20State%20Opinion%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-11-060-CR%20McCarty%20v.%20State%20Opinion%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.WordSection2
 {page:WordSection2;}
-->











 
 
 
 
 
 
 




Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

 In
The

   Court
of Appeals

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Sixth
Appellate District of Texas at Texarkana

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  ______________________________

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  No. 06-11-00060-CR

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  ______________________________

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  ROBERT HUGH MCCARTY,
Appellant

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  V.

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  THE STATE OF TEXAS, Appellee

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 


Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  On Appeal from the Sixth
Judicial District Court

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Lamar County, Texas

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Trial
Court No. 23969

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Before Morriss, C.J.,
Carter and Moseley, JJ.

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Memorandum Opinion by Chief Justice Morriss








Â Â Â Â Â Â Â Â Â Â Â  MEMORANDUM OPINION

Â 

Â Â Â Â Â Â Â Â Â Â Â  In his most
recent trouble with the criminal law, after Robert Hugh McCarty pled guilty to
a charge of driving while intoxicated (DWI) and true to two prior DWIs, McCarty
was convicted of DWIÂas a third DWI offense, making the offense a third-degree
felony.Â  See Tex. Penal Code Ann.
Â§Â§ 49.04 (basic DWI), 49.09(b)(2) (West 2011) (two prior DWIs makes DWI
third-degree felony).[1]

Â Â Â Â Â Â Â Â Â Â Â  On appeal,
McCarty argues that the evidence was legally insufficient to support his
conviction because the two prior DWI convictions were void and thus not
available to enhance his offense to a third-degree felony.Â  He claims that the prior DWIs were void
because he was indigent and was not represented by counsel during their
adjudication.Â  McCartyÂs claim on appeal
amounts to a collateral attack on the two prior DWI convictions.Â  We affirm the trial courtÂs judgment because
McCarty has not demonstrated from this record that the prior DWI convictions
are void.

Â Â Â Â Â Â Â Â Â Â Â  A collateral
attack on a prior judgment is permitted only if the prior judgment is void. Â Rhodes
v. State, 240 S.W.3d 882, 887 (Tex. Crim. App. 2007). Â ÂWe have long held that a defect that renders
a sentence void may be raised at any time.ÂÂ 
Ex parte Rich, 194 S.W.3d 508,
511 (Tex. Crim. App. 2006); Ex parte
Black, 922 S.W.2d 181, 182 (Tex. Crim. App. 1996).[2]Â  It is true that a criminal judgment is void if
that judgment is rendered in a proceeding in which an indigent defendant is
required to face trial without appointed counsel, unless he or she waived the
right to counsel. Â Nix v. State, 65 S.W.3d 664, 668 (Tex. Crim. App. 2001).

Â Â Â Â Â Â Â Â Â Â Â  When prior
convictions are collaterally attacked, the judgments reflecting those
convictions are presumed to be regular and the accused bears the burden of
defeating that presumption.Â  Swanson v. State, 722 S.W.2d 158, 164
(Tex. App.ÂHouston [14th Dist.] 1986, pet. refÂd).Â  Bald assertions by a defendant that he was
without the assistance of counsel at his prior convictions are not sufficient
to overcome the presumption of regularity of the judgments. Â Id.
(citing Disheroon v. State, 687
S.W.2d 332, 334 (Tex. Crim. App. 1985)).Â 
The fact that a judgment is silent as to the name of defense counsel
alone is insufficient to overcome the presumption of regularity of the records
before the court.Â  Chancy v. State, 614 S.W.2d 446, 447 (Tex. Crim. App. [Panel Op.] 1981);
Ex parte Swinney, 499 S.W.2d 101, 103
(Tex. Crim. App. 1973).

Â Â Â Â Â Â Â Â Â Â Â  McCartyÂs
two prior DWI convictions were introduced as exhibits for the trial court.Â  McCarty, who was found to be indigent in this
case, first argues that he was Âclearly indigentÂ in 1987 and 2007 when the two
prior convictions were adjudicated.Â  In
support, he cites to his sisterÂs testimony that he lost a job at Campbell Soup
as a result of an arson conviction in 1984.Â 
In March 2011, McCarty testified that he received a disability check in
the amount of $673.00 per month for the past six years.Â  The assumption McCarty asks this Court to
draw is that the disability checks were McCartyÂs sole source of income after
1984.

Â Â Â Â Â Â Â Â Â Â Â  McCartyÂs
sister also testified, however, that McCarty Âdid odd jobsÂ and Âdid work for
the lawn services and different peopleÂ in the recent past.Â  This was confirmed by McCarty, who stated
that he was employed in Âprofessional yard work, landscaping, mowing yards and
stuffÂ for the past eight years.

[F]or a judgment to be void, the record must
leave no question about the existence of the fundamental defect. Â If the record is incomplete, and the missing
portion could conceivably show that the defect does not in fact exist, then the
judgment is not void, even though the available portions of the record tend to
support the existence of the defect.

Â 

Nix, 65 S.W.3d at
668Â69.Â  The evidence presented by this
record fails to establish that McCarty was indigent during 1987 and 2007.

Â Â Â Â Â Â Â Â Â Â Â  Also, we do
not find that McCarty was without counsel when he pled guilty to the two prior
DWI convictions.Â  The 2007 DWI conviction
stated on the judgment that McCarty appeared Âin person, (and by attorney),Â
and pled guilty to the offense.Â  The 1987
DWI conviction also indicated McCarty had counsel.Â  This judgment stated that Âthe Defendant then
and there in open court, and in writing, requested permission to waive a trial
by jury and to be tried before the Court, to which counsel for both the State
of Texas and Defendant added their written consent and approval.Â 

Â Â Â Â Â Â Â Â Â Â Â  Where there
is a claim that an indigent person was denied counsel, or that a waiver of
counsel was involuntary, the record must demonstrate the truth of the
claim.Â  Nothing in the prior DWI judgments
establishes that McCarty was not represented by counsel; in fact, they suggest
the opposite.Â  The fact that McCartyÂs
counsel was not identified by name is insufficient to overcome the presumption
of validity. Â See Chancy, 614 S.W.2d at 447; Swanson,
772 S.W.2d at 164 (appellant fails to meet his burden when his Âtestimony that
he was not represented by counsel at the time he pled guilty in the prior
felony case is uncorroborated by any evidence in the recordÂ).

Â Â Â Â Â Â Â Â Â Â Â  Based on the
record before us, McCarty has not overcome the presumption of regularity of the
prior DWI convictions. Â Chancy, 614 S.W.2d at 447; Swanson, 722 S.W.2d at 164.Â  Therefore, the evidence was legally
sufficient to sustain the trial courtÂs judgment in this case.

Â Â Â Â Â Â Â Â Â Â Â  We affirm
the trial courtÂs judgment.

Â 

Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Josh
R. Morriss, III

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Chief
Justice

Â 

Date Submitted:Â Â Â Â Â Â Â Â Â  September
20, 2011Â Â Â  

Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â  September
21, 2011

Â 

Do Not Publish

Â 

Â 

Â 











[1]Additionally,
based on McCartyÂs plea of true to a sentence-enhancement of arson, he was
sentenced to seven yearsÂ imprisonment.Â  See Tex.
Penal Code Ann. Â§Â§ 12.42(a)(3) (enhancing third-degree felony, with one
prior enhancement offense, to a second-degree-felony punishment range),Â 12.33
(West 2011) (incarceration range for second-degree felony, two years to twenty
years).

Â 





[2]An
appellant does not forfeit this claim by pleading true to enhancement
paragraphs.Â  Rich, 194 S.W.3d at 513.